| | | |
|---|---|---|
| **KELLY JORDAN,** | * | IN THE |
| **Individually and as Personal** | | |
| **Representative of the ESTATE OF** | * | CIRCUIT COURT |
| **MARCUS MARTIN** | | |
| **P.O. BOX 66247** | * | OF MARYLAND |
| **BALTIMORE, MD 21239** | | |
| | * | FOR |
| **Plaintiff** | | |
| | * | BALTIMORE CITY |
| **v.** | | |
| | * | CASE NO.:_____ |
| **MAYOR & CITY COUNCIL OF** | | |
| **BALTIMORE CITY** | * | |
| **100 N. HOLIDAY STREET** | | |
| **SUITE 101** | * | |
| **BALTIMORE, MD 21216** | | |
|     SERVE ON: EBONY THOMPSON | * | |
|           100 N. HOLIDAY STREET | | |
|           BALTIMORE, MD 21216 | * | |
| **and** | | |
| | * | |
| **BALTIMORE POLICE DEPARTMENT** | | |
| **100 N. HOLIDAY STREET** | * | |
| **SUITE 101** | | |
| **BALTIMORE, MD 21216** | * | |
|     SERVE ON: LISA WALDEN | | |
|           100 N. HOLIDAY STREET | * | |
|           BALTIMORE, MD 21216 | | |
| | * | |
| **and** | | |
| | * | |
| **OFFICER IAN SMITH** | | |
| **75 VILLAGE MILL CT** | * | |
| **OWINGS MILLS, MD 21117** | | |
| | * | |
| **Defendants** | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND JURY DEMAND

NOW COMES, Kelly Jordan, personal representative of the Estate of Marcus Martin, by and through her attorneys, Brandon C. James and the James Legal Group, brings this claim against the Mayor and City Council of Baltimore, the Baltimore City Police Department, and Baltimore City Police Officer Ian Smith ("Defendants"), and in support thereof states:

## INTRODUCTION

1.      This is a civil action brought pursuant to 42 U.S.C. Section 1983 seeking damages against the Defendants for committing acts under the color of law which deprived Marcus Martin of rights secured under the Constitution and laws of the United States, as well as the laws of the State of Maryland.

## JURISDICTION

2.      Jurisdiction exists in this case pursuant to the Fourth and Fifth Amendments to the Constitution, and under 42 U.S.C. Section 1983, 28 U.S.C. Section 1331, 28 U.S.C. Section 1343.

3.      The State Law claims for relief are within supplemental jurisdiction of this Honorable Court pursuant to 28 U.S.C. Section 1367.

## PARTIES

4.      Plaintiff Kelly Jordan is the personal representative of the Estate of Marcus Martin.

5.      Defendants include the Mayor and City Council of Baltimore City ("Baltimore City"), the Baltimore City Police Department ("Police Department"), and Baltimore City Police Officer Ian Smith ("Officer Smith").

## FACTUAL ALLEGATIONS

### BALTIMORE CITY'S POLICY REGARDING MENTAL HEALTH

6.      In the 2019 consent decree issued by the U.S. Department of Justice, there was a finding that the Police Department responded to behavioral health emergencies that someone with more tailored training could handle.

7.      In December 2019, the Behavioral Health System Baltimore, Inc. ("Behavioral Health") created the Baltimore Public Behavioral Health System Gap Analysis which analyzed the Police

Department's Crisis Interaction with the citizens of Baltimore. The report analyzed data from 2016 -2018.

8.      The report detailed that less than two percent of the Police Department's calls of service were in response to behavioral health emergencies, yet only half of the time were properly trained police officers dispatched to the scene. The report also found that one-third of behavioral health calls occurred during the hours of 6 pm – 6 am.

9.      In response, the Police Department created the Crisis Intervention Team Certification in 2021, with the plan of training thirty percent of active-duty patrol officers on behavioral health or crisis related problems which necessitate a law enforcement response. New Police Department recruits are given a three-day training on crisis intervention.

10.     In addition, Baltimore City partnered with the Behavioral Health System Baltimore, Inc. ("Behavioral Health"), to perform the function of managing Baltimore City's behavioral health system. Behavioral Health is a non-profit entity which consists of a five-member crisis team which includes police officers and a licensed clinical social worker. According to the Police Department, Behavioral Health staff receive a more intense version of training that is tailored to their specific position.

11.     Baltimore City and the Police Department have a policy which does not allow Behavioral Health to respond when there is a weapon involved in the incident.

### BALTIMORE CITY POLICE'S RECENT HISTORY OF KILLING THE MENTALLY HARMED

12.     On August 28, 2019, the Baltimore City Police Department killed Tyrone D. Banks. Family members of Banks stated that he suffered with mental health issues and wanted to commit suicide by cop. The Baltimore City Police Commissioner Michael Harrison stated that Banks' mental health and the fact that he wanted to commit suicide by police was a part of the investigation. Even

though the Police Department was aware of Banks' mental health issues, and that he was armed, the Police Department decided to confront Banks at 11 p.m. with thirteen officers firing their guns, killing Banks. There has been no evidence that Banks fired a single shot at police officers.

13.     On July 1, 2020, Police Department officers killed an unidentified thirty-three-year-old male in his basement located on the 5800 block of Falkirk Road. At around 3:30 a.m., 911 operators were called because the unidentified male was suffering from a mental health crisis related to his paranoid schizophrenia. When the Police Department officers arrived on the scene, the confused unidentified male asked how the police officers got into his home and stated that the officers were going to kill him. The confused male then pulled out a handgun and was shot by two officers. The mentally harmed male was luckily not killed by the Police Department but was somehow charged with assault. Adrienne Breidenstine, vice president of policy and communications at Behavioral Health stated that this incident could have gone better if a mental health professional was present and that the incident represents a total system failure of the behavioral health system.

14.     On November 6, 2022, Police Department officers killed Tyree Moorehead who was known for anti-gun violence activism. Despite Moorehead's activism, he suffered from mental health issues. Police Department officers arrived at the intersection of Fulton and Lafayette in Baltimore City where they saw Moorehead standing next to a woman with a knife. There was no assessment regarding Moorehead's mental health or if better trained officers should arrive on the scene. The police officers immediately engaged Moorehead, instructing him to drop the knife. Instead, Moorehead jumped on top of the female and the officers shot him in his back thirteen times. The woman who Moorehead jumped onto was not injured by shooting or stabbing.

### DEFENDANT OFFICER SMITH'S HISTORY IN THE POLICE DEPARTMENT

15.     In 2013, Officer Smith assaulted Keondre L. Boykin by punching him in the mouth for refusing to sit on the ground. As a result of Officer's Smith assault, Baltimore City paid Boykin $75,000. In 2017, Officer Smith was involved in an illegal search and seizure of Ivan Potts, Jr. Potts was sitting inside of his parked vehicle on a one-way street in Baltimore. Officer Smith and his partner illegally drove up the one-way street to park next to Potts. The police officers then surrounded Potts and illegally searched his vehicle. The Court of Special Appeals held that Officer Smith's search was in violation of Potts' constitutional rights and suppressed any evidence recovered from the search. On January 28, 2018, Officer Smith shot and killed Billy Rucker in Baltimore. Rucker was attempting to flee from Officer Smith on foot and was armed with a handgun. As Officer Smith pursued Rucker, he told him to stop running or he will kill Rucker. As Rucker continued to flee, his firearm discharged towards the ground. Officer Smith then shot Rucker in the back, killing the thirty-three-year-old man. Despite Officer Smith's documented history of murder, assault, and violating the citizens of Baltimore civil rights, he is still employed by Baltimore City and the Police Department.

### MARCUS MARTIN'S KILLING BY THE HANDS OF THE POLICE DEPARTMENT

16.     On August 8, 2021, at 9:18 p.m. Baltimore City Police officers were called to 6027 Alta Avenue in Baltimore, Maryland with a report of an armed person. Upon arrival to the scene, the police officers were notified that Martin was having a behavioral health crisis and was armed. Police officers were also notified that Martin was prescribed psychiatric medications which he was not taking. When police officers made contact with Martin, he locked himself into his home.

17.     Because Martin was armed, Baltimore City and Police Department policy dictated that no Behavioral Health staff would be dispatched to the scene. The Baltimore City and Police Department policy mandated that Baltimore City police officers were required to address Martin's mental health crisis. Thus, for six hours, Baltimore City police officers attempted to negotiate with Martin and have him surrender himself. There is no evidence that any officers on the scene received the Crisis Intervention Team Certification and had adequate training on dealing with a mental health crisis. Instead, the Baltimore City Police officers are heard laughing about Martin's mental health crisis and making jokes regarding the situation.

18.     At around 3:00 a.m., SWAT team members surrounded Martin's home and communicated with Martin via a police robot and via loud horn attached to an armored vehicle. Other than police officers inside of the armored vehicle, police officers are not in the eyesight of Martin. Martin had a gun in his hand at his front door and communicated with police officers. This communication lasted for over thirty minutes. Police officers communicate that Martin is attempting to shoot at the police robot, but no bullets were fired. Martin shoots the police robot. When the police robot is shot, there is no police officers in Martin's eyesight. Suddenly, a loud noise is heard, and SWAT team members communicate that Martin has been shot and is inside of the home. Martin was pronounced dead at 3:40 a.m. It was later learned that Officer Smith killed Martin.

## COUNT I Plaintiff v. Defendants
### (SURVIVAL ACTION)

19.     Plaintiff incorporates by reference all the foregoing paragraphs as if fully set forth herein.

20.     Pursuant to the Annotated Code of Maryland, Estates and Trusts § 7-401(y), the decedent's right of action for wrongful and negligent conduct against defendants survives in favor of Kelly Jordan, the legal representative of the deceased. Plaintiff, Kelly Jordan, demands all damages

recoverable under the Act including substantial damages for funeral and medical expenses and conscious pain and suffering, as well as any other damages recoverable under the Act.

21.     Wherefore, plaintiff demands judgment against defendants, individually and jointly in the full and fair amount of Eight Hundred Thousand Dollars ($ 800,000.00) in compensatory and punitive damages, plus interest and costs.

**COUNT II Plaintiff v. Defendants**

**(Excessive Force/Police Brutality)**

22.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

23.     At all times relevant herein, defendants had a duty to employ only reasonable measures in their interaction and treatment of Martin.

24.     Notwithstanding said duties, defendants, through its employees and/or agents, and individually wrongfully and unlawfully used excessive and unreasonable force on decedent, inasmuch as no force whatsoever was warranted under the circumstances nor authorized.

25.     Defendants acting under color of law, approved and/or condoned the intentional actions of its agents; thus, any and all liability on the part of the agents is imputed to defendants.

26.     As a direct and proximate result of the intentional and wrongful actions of defendants, and defendants' agents, decedent was murdered.

27.     Wherefore, plaintiff demands judgment against defendants, individually and jointly in the full and fair amount of Eight Hundred Thousand Dollars ($800,000.00) in compensatory and punitive damages, plus interest and costs.

## COUNT III Plaintiff v. Defendants
### (Battery)

28.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

29.     The defendants without proper grounds, willfully and maliciously and/or willfully and maliciously caused the shooting of decedent. The shot was made while decedent presented no immediate threat to anyone.

30.     As a direct and proximate result of defendants' willful, malicious and intentional actions, decedent was murdered.

31.     Wherefore, plaintiff demands judgment against defendants, individually and jointly in the full and fair amount of Eight Hundred Thousand Dollars ($800,000.00) in compensatory and punitive damages, plus interest and costs.

## COUNT IV Plaintiff v Baltimore City and Police Department
### (Negligent Training and Supervision)

32.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

33.      At all times relevant herein, defendant's agents were acting under the direction and control, and pursuant to the rules, regulations, policies and procedures, of defendant Baltimore City and the Police Department.

34.     Defendants acted negligently, carelessly, and recklessly by failing to properly train, supervise, control, direct, and monitor the police officers in their duties and responsibilities.

35.     As a direct and proximate result of the acts and omissions of defendants, Martin was wrongfully and unlawfully shot to death.

36.     Wherefore, plaintiff demands judgment against defendants, individually and jointly in the full and fair amount of Eight Hundred Thousand Dollars ($800,000.00) in compensatory and punitive damages, plus interest and costs.

## COUNT V Plaintiff v. Defendants
## VIOLATION OF MARYLAND CONSTITUTION

37.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

38.     The defendants used unreasonable and unnecessary force in the murder of Martin in violation of his rights to be free from unreasonable searches and seizures under Articles 24 and 26 of the Maryland Declaration of Rights.

39.     The defendants use of unreasonable and unnecessary force and/or inexcusable neglect and delay after shooting Martin and was a proximate cause of his injuries and death and caused him to endure great conscious pain and suffering, and incur medical fees and costs.

40.     Wherefore Plaintiff Beneficiaries demand damages from Defendants in the full and fair amount of One Hundred and Fifty Million Dollars ($150,000,000.00) in compensatory and punitive damages, plus interest and costs.

## COUNT VI Plaintiff v. Defendants
## (Deprivation of Civil Rights, *42 U.S.C. §1983*)

41.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

42.     Plaintiff further alleges that defendant and defendant's agents, acting under the color of law, with deliberate indifference to and reckless disregard for the safety and well-being of Martin, and in violation of the 4th and 5th Amendments to the Constitution, did on August 8, 2021, commit or allow to be committed, acts which deprived Martin of his Constitutional rights without affording him due process of law.

43.     As a direct and proximate result of the actions of the defendants, Martin was murdered by police officers.

44.     Wherefore, plaintiff demands judgment against defendants in the full and fair amount of One Hundred and Fifty Million Dollars ($150,000,000.00) in compensatory and punitive damages, plus interest and costs.

### COUNT VII Plaintiff v. Defendants
### (42 U.S.C. 1983 - Due Process)

45.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

46.     Defendants were deliberately indifferent and callous in their neglect to Martin's serious medical needs in violation of his rights to due process under the 5th and 14th Amendments of the Constitution of the United States.

47.     The defendants' failure to monitor Martin while his head was under a sheet and to provide adequate medical care i.e. make sure his airways were clear, was a proximate cause of Martin's death and caused him to endure great conscious pain and suffering, and incur medical fees and costs.

48.     The defendants inflicted unnecessary, malicious and wanton pain and suffering on Martin by shooting him. The force used against Martin was not an effort to maintain discipline, but was used maliciously and sadistically for the purpose of causing harm.

49.     The use of force and the inexcusable neglect against Martin by defendants was in violation of his rights to due process under the 5th and 14th Amendments to the Constitution of the United States and was a proximate cause of his death.

50.     Wherefore, plaintiff demands judgment against defendants in the full and fair amount of One Hundred and Fifty Million Dollars ($150,000,000.00) in compensatory and punitive damages, plus interest and costs.

## COUNT VIII Plaintiff v. Baltimore City and Police Department
### (42 U.S.C. 1983 - Monell Claim)

51.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

52.     Defendants have failed to adequately train, instruct, supervise and discipline its police officers against the use of excessive force. The failure to properly train, instruct, supervise and discipline officers has fostered and encouraged the use of excessive force. The failure to properly train, instruct, supervise and discipline police officers demonstrates a gross disregard for constitutional rights and was a proximate cause of injuries and death to Martin.

53.     Defendants have instituted and maintained formal and informal customs, policies and practices that foster, promote and encourage officers to use excessive force. Among them are the following:

a. The use of excessive force occurs so frequently that it has become an accepted manner of law enforcement among rank and file officers within the police department. This is as a result of the police department's failure to establish effective policies, rules, orders, guidelines and practices to ensure that excessive force will not be used, and that allegations of excessive force will be thoroughly investigated and appropriately punished when found to have occurred.

b. The Defendant has failed to effectively instruct officers that they have a duty to prevent and report excessive force when it occurs.

c. The Defendant lacks an effective system for reporting acts of excessive force. When reports are filed, they are routinely destroyed and cannot be used to track an officers use of force.

d. Although police officers have been adjudicated in civil courts as liable for actions constituting excessive force, the police department fails to punish, sanction, retrain or terminate such officers.

e. The police department does not keep accurate records as to the number of injuries to citizens by members of the police department. This policy encourages the use of force in an inappropriate manner, and inhibits the department from critically evaluating the need for a change in training.

f. Officials of the police department and State's Attorney's Office for Baltimore City are aware that officers frequently engage in acts of brutality against members of the public, and that such officers falsely arrest and charge those members of the public with the crimes of resisting arrest, disorderly conduct and/or battery. They are equally aware that such persons have often sustained serious injuries as a result of police brutality and excessive force and that such injuries have required medical treatment and hospitalization. Often, the officers fail to appear in court to testify against the persons who are charged and the charges are usually dismissed or reduced. In the vast majority of these cases, no police official or member of the States Attorney's office ever investigated whether the officer committed acts of excessive force or requests that such officer be disciplined or prosecuted.

g. Defendants have a policy that mental health crisis in the city of Baltimore will not be responded to appropriate professionals when there is a weapon involved.

54.     As a direct and proximate result of the customs, policies and practices of Defendants, Martin sustained serious injuries and death.

55.     Wherefore, plaintiff demands judgment against defendants in the full and fair amount of One Hundred and Fifty Million Dollars ($150,000,000.00) in compensatory and punitive damages, plus interest and costs.

Respectfully submitted,

Brandon C. James
AIS No.: 2101130004
The James Legal Group, LLC
P.O. Box 66247
Baltimore, MD 21239
(410) 504-2274
Bjames@jameslegalgroup.org
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demand trial by jury on the allegations in the Complaint.

Respectfully submitted,

Brandon C. James
AIS No.: 2101130004
The James Legal Group, LLC
P.O. Box 66247
Baltimore, MD 21239
(410) 504-2274
Bjames@jameslegalgroup.org
*Attorneys for Plaintiff*

### DEMAND FOR PUNITIVE DAMAGES

Plaintiff seeks to assert a claim for punitive damages due to the Defendants egregious behavior. Defendants actions constitute actual malice due to the clear intent to physically harm the Plaintiff, as seen in the murder of Marcus Martin.

Punitive damages are appropriate in this case due to the national concern for the issue of police brutality. Addressing police brutality, especially against marginalized individuals, is of crucial importance to society. The importance of eradicating this behavior has been at the forefront of American society for the last decade. Punitive damages are necessary to discourage these actions from the Defendants, but also law enforcement across the nation.

The consequences of police brutality extends beyond the immediate victims and leaks into the surrounding community. Defendant Baltimore City and the Police Department needs to hire and train their police officers in a way to ensure they are not contributing to the problem. To address the issue of police brutality effectively, it is crucial for law enforcement agencies to take proactive steps, starting with the hiring and training of fit employees.

Punitive damages are appropriate for Defendant Baltimore City and the Police Department in order to encourage more strenuous hiring practices and more complete training programs for the employees of the Baltimore City Police Department. By making an example of Defendant Baltimore City and the Police Department, it will not only encourage them to ensure their employees are adequately trained for the job, but it will also dissuade other law enforcement agencies across the United States from engaging in lackadaisical hiring and training processes.

Police brutality not only undermines the principles of justice but also infringes upon the fundamental human rights of individuals. The behavior of Defendants erodes the core values of equality and justice that the legal system was built upon. Police brutality has devasting impacts on not only the individual victim, but the community as a whole.

Plaintiff requests that Defendants pay punitive damages in amount in excess of One Hundred and Fifty Million Dollars ($ 150,000,000.00), in order to dissuade this behavior in the Defendants, and law enforcement as a whole.

Respectfully submitted,

Brandon C. James
AIS No.: 2101130004
The James Legal Group, LLC
P.O. Box 66247
Baltimore, MD 21239
(410) 504-2274
Bjames@jameslegalgroup.org
*Attorneys for Plaintiff*