**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                    |     |                            |
|------------------------------------|-----|----------------------------|
| **KELLY JORDAN,**                  | *   |                            |
|                                    | *   |                            |
|                                    | *   |                            |
| **Plaintiff,**                     | *   |                            |
|                                    | *   | **Civil Case No.: SAG-23-03413** |
| **v.**                             | *   |                            |
|                                    | *   |                            |
| **MAYOR & CITY COUNCIL OF**        | *   |                            |
| **BALTIMORE,** *et al.*,           | *   |                            |
|                                    | *   |                            |
| **Defendants.**                    | *   |                            |
|                                    | *   |                            |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Kelly Jordan ("Plaintiff"), individually and as the personal representative of the Estate of Marcus Martin, brought this action in state court against the Mayor and City Council of Baltimore ("City"), the Baltimore Police Department ("BPD"), and BPD Officer Ian Smith, alleging various state and federal claims arising out of the fatal police-involved shooting of Marcus Martin on August 8, 2021. ECF 2. On December 18, 2023, the City and BPD removed the action to this Court. ECF 1. Plaintiff now seeks remand back to state court. ECF 8. The City and BPD have also each filed a motion to dismiss for failure to state a claim. ECF 9, 10, 22, 23. This Court has reviewed all three motions, along with the oppositions and replies. ECF 13-1, 15-1, 18, 22-1, 23-1, 26-1, 27. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, the City's and BPD's motions to dismiss will be GRANTED and Plaintiff's motion to remand will be DENIED.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts are derived from Plaintiff's Complaint and are assumed to be true for the purposes of the pending motions. On August 8, 2021, at 9:18 p.m., BPD officers arrived at

6027 Alta Avenue in Baltimore based on a report of an armed person. ECF 2 ¶ 16. Upon arrival, officers learned that the armed individual, Marcus Martin, was experiencing a "behavioral health crisis," and had not been taking his prescribed psychiatric medications. *Id.* Officers made contact with Martin, who subsequently locked himself in his home. *Id.* A six-hour standoff ensued. *Id.* ¶ 17. Around 3:00 a.m., SWAT team members surrounded Martin's home and communicated with him for over thirty minutes through a police robot and an armored vehicle. *Id.* ¶ 18. During this time, Martin held a gun and stood at his front door. At some point, Martin shot the police robot, and officers responded by fatally shooting Martin inside his home. *Id.* Plaintiff alleges that Officer Ian Smith discharged the fatal shot. *Id.*

Plaintiff commenced this action on October 27, 2023, by filing suit in the Circuit Court of Maryland for Baltimore City. ECF 2. The Complaint seeks compensatory and punitive damages based on eight claims for relief. Count I is captioned "Survival Action" and seeks "substantial damages for funeral and medical expenses and conscious pain and suffering, as well as any other damages recoverable under the" Maryland survival statute, MD CODE ANN. EST. & TRUSTS § 7-401(y).[1] *Id.* ¶ 20. Count II alleges a claim against all Defendants for "Excessive Force/Police

---

[1] In addition to the reasons addressed herein, the Court could separately dismiss Count I because "there is no separate cause of action known as a 'survival claim.'" *Gardner v. Greg's Marine Constr., Inc.*, Civ. No. DKC-13-1768, 2014 WL 198215, at *9 (D. Md. Jan. 14, 2014); *see Johnson v. Balt. Police Dep't*, Civ. No. SAG-18-2375, 2021 WL 1610152, at *5 (D. Md. Apr. 23, 2021) ("[T]he survival statute creates no independent cause of action." (citation omitted)).

Brutality," based on "excessive and unreasonable force" imposed on Martin.[2] *Id.* ¶¶ 22–27. Count III asserts a common law battery claim against all Defendants, *id.* ¶¶ 28–31, and Count IV asserts that the City and BPD negligently trained and supervised BPD officers, proximately causing Martin's death, *id.* ¶¶ 32–35. In Count V, Plaintiff brings state constitutional claims against all Defendants for violations of Martin's rights under Articles 24 and 26 of the Maryland Declaration of Rights. *Id.* ¶¶ 38–40. Finally, Counts VI-VIII allege three federal claims under 42 U.S.C. § 1983: deprivation of civil rights against all Defendants (Count VI), due process violations against all Defendants (Count VII), and a *Monell* claim against the City and BPD (Count VIII). *Id.* ¶¶ 42–55. Plaintiff seeks $800,000 in compensatory and punitive damages for Counts I-IV and $150,000,000 in compensatory and punitive damages for Counts V-VIII. *Id.* ¶¶ 21, 27, 31, 36, 40, 44, 50, 55.

The City and BPD timely removed this action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. ECF 1. Those Defendants also moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF 9, 10. In reviewing the pending motions, the Court initially observed that Plaintiff's Complaint failed to specify whether Plaintiff

---

[2] In addition to the other reasons addressed herein, the Court could also dismiss Count II because there is no standalone tort for "excessive force/police brutality," and Plaintiff complains of the same conduct elsewhere in the Complaint. *See* ECF 2 ¶ 38 (alleging that Defendants "used unreasonable and unnecessary force in the murder of Martin in violation of his rights to be free from unreasonable searches and seizures under Articles 24 and 26 of the Maryland Declaration of Rights"); *id.* ¶¶ 42, 48 (alleging, with respect to 42 U.S.C. § 1983, that Defendants acted "under the color of law, with deliberate indifference to and reckless disregard for the safety and well-being of Martin," and "inflicted unnecessary, malicious and wanton pain and suffering on Martin"). Count II, therefore, necessarily refers to, and is duplicative of, Counts V, VI, and VII, which assert claims for use of excessive force in violation of the Maryland Declaration of Rights and the Fourth and Fourteenth Amendments. *See Ghazzaoui v. Anne Arundel Cnty.*, Civ. No. ELH-14-1410, 2014 WL 3973037, at *6 (D. Md. Aug. 11, 2014) (granting a motion to dismiss a claim for "excessive force/police brutality," which was duplicative of state and federal constitutional claims).

sued Officer Smith in his personal or official capacity. Accordingly, the Court ordered Plaintiff to either advise the Court by letter if she intended to sue Officer Smith solely in his official capacity or, alternatively, file an amended complaint to denote that Officer Smith is sued in his personal capacity and for which claims. ECF 19. Plaintiff elected the latter and filed the operative Amended Complaint on April 19, 2024, stating that Officer Smith is sued "in his personal capacity," but did not specify for which claims ECF 20.[3] The City and BPD promptly renewed their motions to dismiss and advised the Court that, to their knowledge, Officer Smith has not yet been served with process and that undersigned counsel did not represent him. ECF 22-1 at 2 n.2; ECF 23-1 at 2 n.2. This Opinion therefore will adjudicate only those issues that pertain to the City and BPD.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction. *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). A challenge to subject matter jurisdiction may proceed either as a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting that the jurisdictional allegations of the complaint are not true. *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (internal quotation marks omitted) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). The plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Id.*

---

[3] The Amended Complaint does not differ in any other manner from the original Complaint. Therefore, the Court will refer to both as the Complaint and cites them interchangeably in this Opinion.

**B.  Federal Rule of Civil Procedure 12(b)(6)**

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to

dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs.*

*Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a

defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of

law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading

requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to

provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts

sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*,

556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all

civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).

*Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a

complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v.*

*City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*,

550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the

minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III. DISCUSSION

### A. Plaintiff's Motion to Remand

The Court first addresses Plaintiff's motion to remand this action to the Circuit Court of Maryland for Baltimore City. "A defendant in a state civil action may remove the case to federal court only if the federal court can exercise original jurisdiction over at least one of the asserted claims." *Rice v. Mayor & City Council of Balt.*, Civ. No. RDB-15-3396, 2016 WL 1696536, at *3 (D. Md. Apr. 28, 2016) (citing 28 U.S.C. § 1441(a)-(c)). Original jurisdiction exists over any claim arising under the U.S. Constitution and federal laws. 28 U.S.C. § 1331. In a removed case, a federal court "shall have supplemental jurisdiction" over state law claims "that are so related to claims in

the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The court may, however, decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the federal claims; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances. *Id.* § 1367(c). In deciding the additional question of whether to remand claims to state court, "a federal court should consider and weigh in each case . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction . . . over pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

The City and BPD removed this action on the basis that Counts VI-VIII assert federal claims under 42 U.S.C. § 1983 and confer original jurisdiction. *See* ECF 13-1 at 3. The parties do not dispute that the Court has original jurisdiction over Plaintiff's federal claims. Nor do they appear to dispute that the state law claims are sufficiently related because they all arise out of Martin's fatal shooting. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact."). Rather, they dispute whether state law claims predominate this matter and if "principles of economy, convenience, fairness, and comity" favor remanding this case to state court. *See* ECF 8-1 at 4.

### i.   Substantially Predominate

State claims may "substantially predominate" over federal claims when "the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." *Md. Shall Issue, Inc. v. Montgomery Cnty.*, Civ. No. TDC-21-1736, 2022 WL 375461, at *3 (D. Md. Feb. 7, 2022) (quoting *Diven v. Amalgamated Transit Union Int'l*, 38 F.3d 598, 602 (D.C. Cir. 1994)); *see also Citrano v. John Crane-Houdaille,*

*Inc.*, 1 F. Supp. 3d 459, 470 (D. Md. 2014) ("A state claim substantially predominates over the claim that forms the basis of jurisdiction, if that [latter] claim is only an incident or adjunct of the state claim and the state claim is the crux of the action." (internal quotation marks and citation omitted)). "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage[,] a district court may fairly decline to exercise jurisdiction over the state claim." *Md. Shall Issue*, 2022 WL 375461, at *3 (internal quotation marks omitted) (quoting *Gibbs*, 383 U.S. at 727).

Here, the crux of Plaintiff's case is the alleged use of excessive force against Martin and the deprivation of his federal and state constitutional rights. Specifically, Counts VI and VII allege deprivation of Martin's Fourth, Fifth, and Fourteenth Amendment rights under the U.S. Constitution, and Count V alleges deprivation of Martin's rights under Articles 24 and 26 of the Maryland Declaration of Rights. "Numerous Maryland decisions interpreting Articles 24 and 26 have held those Articles to be construed in pari materia with their federal counterparts, the Fourteenth Amendment and the Fourth Amendment of the United States Constitution." *Jones v. Prince George's Cnty.*, Civ. No. AW-04-1735, 2005 WL 1074353, at *8 (D. Md. Apr. 28, 2005); *see Green v. Zendrian*, 917 F. Supp. 493, 497 (D. Md. 1996) ("Article 26 should be construed to prohibit arrests made with excessive force"). "Ordinarily, to the extent that a provision of the Maryland constitution is held to be in pari materia with a federal counterpart, the two constitutional provisions are applied 'in like manner and to the same extent' and 'decisions of the Supreme Court on the [federal provision] are practically direct authorities' for interpreting the Maryland provision." *Jones*, 2005 WL 1074353, at *8 (alteration in original) (quoting *Att'y Gen. of Md. v. Waldron*, 426 A.2d 929, 941 (Md. 1981)). Plaintiff asserts no reason why the Court should deviate from that rule here or why "the same analysis" would not apply between her state constitutional

and her federal constitutional claims.[4] *Brown v. Balt. Police Dep't*, Civ. No. RDB-11-00136, 2011 WL 6415366, at *12 (D. Md. Dec. 21, 2011).

The remaining state law claims, involving common law torts, do not substantially differ "in terms of proof, . . . the scope of the issues raised, or . . . the comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 726. Plaintiff asserts that "all of the federal law claims are tied to the battery and wrongful death claims, which are state law claims" and "[i]f the wrongful death did not occur, the civil rights violation could not have occurred." ECF 8-1 at 4. But Plaintiff failed to plead a wrongful death claim, and her battery claim in Count III would not substantially differ from her constitutional claims in terms of proof or scope. In Maryland, a police officer "is not liable for battery for using a reasonable amount of force when effectuating a lawful detention or arrest" but could be liable if he "uses excessive force, or force greater than is reasonably necessary under the circumstances." *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 383 (D. Md. 2018) (internal quotation marks and citation omitted). Thus, an analysis of an excessive force claim under the Fourth or Fourteenth Amendments would necessarily address the elements of a battery claim. *See Estate of Green v. City of Annapolis*, -- F. Supp. 3d --, 2023 WL 6381453, at *26 (D. Md. Sept. 30, 2023) (explaining that a plaintiff's failure to allege facts to support a Fourth or Fourteenth Amendment claim against the officer defendants meant that the court could also conclude that the officers' contact with the plaintiff did not suffice for a battery claim). And Count IV, which alleges negligent training and supervision against the City and BPD, does not require any more complexity or judicial resources to resolve because, as described below, it can be easily dismissed on sovereign

_____

[4] Plaintiff also asserts a Fifth Amendment due process claim in Counts VI and VII, however, the Fifth Amendment's due process protections apply to the federal government, not to the state or state officials. *See, e.g.*, *Strickland v. United States*, 32 F.4th 311, 356 (4th Cir. 2022) (citing *Davis v. Passman*, 442 U.S. 228, 234 (1979)).

immunity and well-established state law grounds. *But cf. Hinson v. Norwest Fin. S.C. Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (finding support for remand because the state claims involved interpretations of complex state statutes on which there was no state precedent). For these reasons, the Court concludes that the state law claims do not "substantially predominate" over the federal law claims.[5]

### ii.   Other Considerations

"In determining whether to remand, the Court also considers the principles of economy[,] convenience, fairness, and comity . . . ." *Md. Shall Issue*, 2022 WL 375461, at *5 (citing *Hinson*, 239 F.3d at 617). Initially, the Court observes it presently cannot assess the sufficiency of the federal claims against Officer Smith because Plaintiff did not serve Officer Smith in either the state court action or in this case. The retention of, and inability to adjudicate, the federal constitutional claims against Officer Smith strongly counsel against remanding the state law claims and compelling Officer Smith (once served) to participate in two parallel actions involving the same incident. Plaintiff claims that it would be inconvenient and unfair for her to adjudicate her claims twice in state and federal court and that she would have to wait "at least one year" "until the state claim proceeding ends to begin this proceeding." ECF 8-1 at 6. Of course, "[a]ny time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988). But Plaintiff's failure to serve Officer Smith

---

[5] The Court also finds that the comprehensiveness of the remedies sought do not illustrate that the state law claims predominate because Plaintiff seeks the same type of relief (compensatory and punitive damages) against all Defendants for all claims. In fact, Plaintiff seeks far more damages for her constitutional claims than her state tort claims.

prevents this Court from dismissing the remaining federal claims, and the Court must keep (or stay) them until Officer Smith is afforded an opportunity to participate in this action. *See Sciacca v. Durham Cnty. Bd. of Educ.*, 509 F. Supp. 3d 505, 527 (M.D.N.C. 2020) ("The Court must keep the action as it pertains to the claims against [a belatedly served defendant] over which the Court has original jurisdiction."). Moreover, the City and BPD have filed responsive motions seeking dismissal of not just the federal claims, but the state claims as well. Because, as discussed below, those arguments have merit, Plaintiff's potential attempt to re-file those claims against those Defendants in state court would be futile. Thus, the factors of judicial economy, convenience, fairness, and comity outweigh Plaintiff's interest in litigating this case in state court. The Court will now turn to the City's and BPD's motions to dismiss.

## B. Mayor and City Council of Baltimore's Motion to Dismiss

### i. State Law Claims Against the City

The Court will first dismiss all state law claims against the City. The claims pertain to conduct of Officer Smith or other BPD officers, and therefore are necessarily asserted against the City under a theory of *respondeat superior*. *See* ECF 20 ¶¶ 22–40; *Nicholson v. Balt. Police Dep't*, Civ. No. DKC 20-3146, 2021 WL 1541667, at *10 n.9 (D. Md. Apr. 20, 2021). However, "[t]o impose *respondeat superior* liability, the defendant must have an agency or employment relationship with the alleged wrongdoer." *Nicholson*, 2021 WL 1541667, at *10. No such relationship exists between the City and BPD. *See, e.g.*, *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 644 (D. Md. 2014) ("[T]he City does not employ Baltimore police officers and is not liable for their conduct under state law." (citing *Clea v. Mayor & City Council of Balt.*, 541 A.2d 1303, 1306–07 (Md. 1988))). A lack of any employment relationship between BPD officers and the City also requires dismissal of Count IV (negligent hiring and supervision). *See Minnick v. Southwest*

*Airline Co.*, Civ. No. 1:22-cv-3084-JMC, 2024 WL 692859, at *2 (D. Md. Feb. 20, 2024) ("In pressing for a claim for negligent hiring [or] supervision . . . the plaintiff must prove . . . the existence of an employment relationship." (quoting *Mitchell v. Rite Aid of Md., Inc.*, 290 A.3d 1125, 1160 (Md. 2023))). Accordingly, all state law and state constitutional claims against the City are dismissed with prejudice. *Nicholson*, 2021 WL 1541667, at *10 (dismissing all state law tort and constitutional claims against the City); *Hernandez v. Lloyd*, Civ. No. 1:23-cv-01016-JRR, 2024 WL 1329297, at *5 (D. Md. Mar. 28, 2024) (same).

   ii.   **Section 1983 Claims Against the City**

   For similar reasons, the Court also dismisses Counts VI, VII, and VIII against the City with prejudice. "Section 1983 allows individuals to sue any person who violates their constitutional rights while acting under the color of law." *Estate of Anderson*, 6 F. Supp. 3d at 644 (citing 42 U.S.C. § 1983). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court made it possible to sue local governments under Section 1983 based on the unconstitutional actions of individual defendants, but only if the violations occurred while executing a local government policy or custom. Thus, when suing a municipality, a plaintiff's claims under Section 1983 for unconstitutional conduct can only be brought under the standard set forth in *Monell*. *Nicholson*, 2021 WL 1541667, at *10. For this reason, Counts VI and VII, which assert claims directly under Section 1983 rather than *Monell*, must be dismissed with prejudice against the City.

   To establish a viable *Monell* claim, a plaintiff must allege "both the existence of a constitutional violation on the part of the police officer and that any constitutional violation was

proximately caused by a policy, custom, or practice of the defendant municipality." *Id.*; *see also Spell v. McDaniel*, 824 F.2d 1380, 1387–88 (4th Cir. 1987). This Court has repeatedly observed that the City does not sufficiently control the BPD for municipal liability under *Monell* to attach. *See, e.g.*, *Nicholson*, 2021 WL 1541667, at 10 ("Put simply, because the BPD is not controlled, managed, or supervised by the City, Plaintiff cannot satisfy the second requirement for bringing a *Monell* claim under § 1983."); *Estate of Anderson*, 6 F. Supp. 3d at 646 ("[A] § 1983 claim cannot be brought against the City for Baltimore police officer conduct because it does not sufficiently control the BPD and cannot be considered to employ Baltimore police officers."); *Fish v. Mayor & City Council of Balt.*, Civ. No. CCB-17-1438, 2018 WL 348111, at *3 (D. Md. Jan. 10, 2018) ("This court repeatedly has found the City is not responsible for officer conduct under § 1983 because BPD officers are not employees of the City as a matter of law."). In short, the City "has no power" over the BPD, so that any *Monell* claim against the City necessarily fails. *Middleton v. Balt. City Police Dep't*, Civ. No. ELH-20-3536, 2022 WL 268765, at *15 (D. Md. Jan. 28, 2022) (quoting *Mayor & City Council of Balt. v. Clark*, 944 A.2d 1122, 1130 (Md. 2008)).

## C. Baltimore Police Department's Motion to Dismiss

### i. State Law Claims Against the BPD

The BPD is a state agency that enjoys sovereign immunity. "[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction" under Rule 12(b)(1). *Cunningham v. Gen. Dynamics Info. Tech. Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted). "State sovereign immunity bars individuals from maintaining an action against the State of Maryland or one of its agencies unless the immunity is waived." *Estate of Anderson*, 6 F. Supp. 3d at 642 (citing *Balt. Police Dep't v. Cherkes*, 780 A.2d 410, 424 (Md. Ct. Spec. App.

2001)).[6] It also shields the state from damage actions for state constitutional violations and torts committed by state employees. *E.g.*, *id.* (citing *Cherkes*, 780 A.2d at 423–24). Because "the BPD has long been considered a state agency with sovereign immunity to state law claims," this Court must dismiss all state law claims against the BPD with prejudice. *Id.* at 642–43.[7]

### ii. Section 1983 Claims Against the BPD

Counts VI and VII allege that the BPD violated Martin's rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution by, *inter alia*, acting with "deliberate indifference to and reckless disregard for" Martin's safety and well-being and ultimately causing his death. ECF 20 ¶¶ 42–49. As noted above, however, a plaintiff's Section 1983 claims against a municipality can only be brought under the standard set forth in *Monell*. Counts VI and VII do not allege a *Monell* claim. Rather, Counts VI and VII necessarily duplicate the constitutional violations Plaintiff alleged in her separate *Monell* claim in Count VIII by attempting to hold the BPD liable

---

[6] The Court takes judicial notice of recent legislative developments to assert local control over the BPD. *See Open Just. Balt. v. Balt. City L. Dep't*, Civ. No. ELH-22-1901, 2023 WL 5153654, at *20 n.21 (D. Md. Aug. 10, 2023) (noting that in November, 2022, 82% of Baltimore City voters approved a ballot measure to bring the BPD under local control (quoting *Baltimore Police Being Placed Under City Control After Functioning as State Agency*, POLICE MAG. (Nov. 14, 2022), https://www.policemag.com/patrol/news/15307915/baltimore-police-being-placed-under-city-control-after-functioning-as-state-agency)), *appeal filed*, No. 23-2293 (Dec. 18, 2023). However, this ballot measure did not occur until after Martin's fatal shooting. Moreover, all necessary steps to effectuate the ballot measure are not yet complete, and the BPD remains a state agency as of the date of this Opinion. *See* Press Release, *Mayor Scott Signs Bills Enshrining Baltimore Police Department into City's Charter and Code*, CITY OF BALT. (Jan. 24, 2024), https://mayor.baltimorecity.gov/news/press-releases/2024-01-24-mayor-scott-signs-bills-enshrining-baltimore-police-department-citys.

[7] Plaintiff does not dispute that this Court lacks jurisdiction over her state law claims against the BPD. *See* ECF 26-1 at 3 ("[B]ecause of sovereign immunity, this Honorable Court cannot hear any state law claims in this matter."). Plaintiff insists instead that this renders remand appropriate. However, the BPD enjoys sovereign immunity from state law claims whether in state or federal court.

for the conduct of Officer Smith. Because local governments like the BPD cannot be vicariously liable for their employees' actions, Counts VI and VII must be dismissed with prejudice as to the BPD. *See, e.g.*, *Grim v. Balt. Police Dep't*, Civ. No. ELH-18-3864, 2019 WL 5865561, at *8 (D. Md. Nov. 8, 2019) ("[A] municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior*." (citing *Monell*, 436 U.S. at 693–94)).

Finally, as to Count VIII, the Court finds that Plaintiff fails to plead a viable *Monell* claim. A plaintiff may allege four types of policies or customs for which a municipality may be held liable under *Monell*:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). "Regardless of which theory a plaintiff proceeds under . . . a § 1983 claim against a municipality must plead factual content that would allow the Court to draw a reasonable inference" that the plaintiff suffered a deprivation of a constitutional right and that the violation of that right was caused by the policy or custom. *Lilly v. Balt. Police Dep't*, -- F. Supp. 3d --, 2023 WL 6216605, at *9 (D. Md. Sept. 25, 2023). In other words, "even where such a 'policy' . . . might be inferred, it must still be shown to have been the 'moving force of the constitutional violation.'" *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

Here, Plaintiff alleges that the BPD: (1) has an unconstitutional express policy regarding engagement with armed individuals suffering from mental health episodes; (2) fails to supervise, discipline, and train its officers on the use of excessive force; and (3) condones policies and

practices of excessive force within the department. *See* ECF 20 at ¶¶ 11, 52–53. The Court will analyze each theory of liability in turn.

*Express Policy*

Plaintiff asserts that the BPD has a "recently formed policy" that allegedly prohibits behavioral health professionals from responding to armed individuals experiencing mental health crises. ECF 26-1 at 5; ECF 20 ¶ 17. According to the Complaint, the BPD enacted this policy in response to a federal consent decree, which found that the BPD "responded to behavioral health emergencies that someone with more tailored training could handle." ECF 20 ¶ 6. Plaintiff alleges that in response to the consent decree, the BPD created "the Crisis Intervention Team Certification," to train 30% of active-duty patrol officers on behavioral health problems and partnered with Behavioral Health System Baltimore, Inc., ("Behavioral Health") "to perform the function of managing Baltimore City's behavioral health system." *Id.* ¶ 10. However, according to Plaintiff, the BPD's recent policy prohibits Behavioral Health employees from responding to incidents involving weapons. *Id.* ¶ 11. The essence of Plaintiff's *Monell* theory, then, appears to be that this express policy violated Martin's constitutional rights because it compelled Officer Smith and other BPD officers to engage with Martin instead of any Behavioral Health professionals who "receive a more intense version of training that is tailored to their specific position." *Id.* ¶ 10.

Plaintiff's theory fails to state a claim for at least two reasons. First, Plaintiff fails to identify any actual BPD policy, written ordinance, or regulation that governs behavioral health emergencies or responses. Plaintiff merely describes "a policy" that formed in response to a 2019 federal consent decree. *Id.* ¶ 11. Without more, neither this Court nor Defendants can ascertain what official policy is at issue, or whether that policy is unconstitutional. "Such bare assertions of

a 'policy/custom,' devoid of factual support, do not suffice to state a *Monell* claim." *Brent v. City of Cumberland Police Dep't*, Civ. No. JKB-22-1349, 2023 WL 2457591, at *9 (D. Md. Mar. 10, 2023). *But cf. Corbitt v. Balt. City Police Dep't*, Civ. No. RDB-20-3431, 2022 WL 846209, at *5 (D. Md. Mar. 22, 2022) (reviewing the sufficiency of allegations that specifically challenged a 2017 version of BPD's Policy 1503 regarding vehicular chases); *Simmons v. Balt. City Police Dep't*, Civ. No. RDB-21-0969, 2021 WL 3418840, at *9–*10 (D. Md. Aug. 5, 2021) (reviewing the constitutionality of the 2019 version of BPD's Policy 1503, including its enactment history following a federal consent decree).

Second, even if the Court could infer an express policy from the Complaint, Plaintiff offers no factual basis to support the conclusion that this policy has "at least an affirmative link," to the incident involving Martin, *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987) (internal quotation marks and citation omitted), or was the "moving force" of the constitutional violation, *Milligan*, 743 F.2d at 230. Plaintiff does not allege—nor could she—that Martin had a constitutional right to interact with Behavioral Health employees rather than BPD officers during the August, 2021 incident. Instead, Plaintiff's contention is that the policy prohibited "appropriate professionals" from responding to the scene and "mandated" that Officer Smith and other BPD officers "address Martin's mental health crisis" instead. *Id.* ¶¶ 17, 53g. Even assuming these allegations are true, the notion that the BPD violated Martin's constitutional rights because they were not as well-equipped to handle his mental health crisis as other professionals is conclusory and speculative, without any other facts. Therefore, because Plaintiff fails to draw any meaningful connection between the policy and any alleged deprivation of Martin's constitutional rights, she cannot show that the policy was the "moving force" behind the alleged violations or that it made them "reasonably probable" or "almost bound to happen." *E.g.*, *Milligan*, 743 F.2d at 230; *Spell*,

824 F.2d at 1391. Accordingly, Count VIII does not state a claim under the express policy theory of municipal liability and as presently pleaded, it is dismissed without prejudice.

*Failure to Train*

Plaintiff next alleges that the BPD failed to train police officers against the use of excessive force and this failure "was a proximate cause of injuries and death to Martin." ECF 20 ¶ 52. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To adequately plead a failure to train claim, the "complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious choice' by the municipality, and (3) that the officer's conduct resulted from said training." *Lewis v. Simms*, Civ. No. AW-11-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012) (quoting *Drewry v. Stevenson*, Civ. No. WDQ-09-2340, 2010 WL 93268, at *4 (D. Md. Jan. 6, 2010)), *aff'd*, 582 F. App'x 180 (4th Cir. 2014). A plaintiff "must point out a specific deficiency in training, rather than general laxness or ineffectiveness in training," and that the training inadequacy "is so obvious" that it is "likely to result in the violation of constitutional rights." *Shipley v. Disney*, Civ. No. SAG-21-3173, 2022 WL 2789076, at *10 (D. Md. July 15, 2022) (internal quotation marks omitted) (first quoting *Spell*, 824 F.2d at 1390; then quoting *Canton*, 489 U.S. at 390). "Notably, even if 'a particular officer may be unsatisfactorily trained,' that 'will not alone suffice to fasten liability on the [BPD], for the officer's shortcomings may have resulted from factors other than a faulty training program.'" *Grim v. Balt. Police Dep't*, Civ. No. ELH-18-3864, 2019 WL 5865561, at *17 (D. Md. Nov. 8, 2019) (quoting *Canton*, 489 U.S. at 390–91).

Plaintiff again offers conclusory assertions, this time that the BPD's "failure to properly train" officers "demonstrates a gross disregard for constitutional rights" and proximately caused Martin's injuries. ECF 20 ¶ 52. Plaintiff fails to identify the nature of the training or any specific deficiency, instead averring a general failure "to effectively instruct officers that they have a duty to prevent and report excessive force." *Id.* ¶ 53b; *see Nicholson v. Balt. Police Dep't*, Civ. No. DKC 20-3146, 2021 WL 1541667, at *8 (D. Md. Apr. 20, 2021) ("[R]eferences to generalized deficiencies within the [BPD] do not sufficiently flesh out [Plaintiff's] allegations."); *Corbitt v. Balt. City Police Dep't*, Civ. No. RDB-20-3431, 2022 WL 846209, at *8 (D. Md. Mar. 8, 2022) (dismissing failure to train claim against the BPD because the plaintiff failed to reference any "particular BPD training practice or a more specific shortcoming in [the] BPD training program").[8] The Complaint also lacks a causal link between the alleged deficient BPD training and the constitutional violations Martin suffered. Plaintiff merely offers a bare-bones assertion that the failure to properly train police officers "was a proximate cause of injuries and death to Martin," ECF 20 ¶ 52, but this insufficiently generalizes that this legal element has been met, *see Peters v. City of Mount Rainer*, Civ. No. GJH-14-00955, 2014 WL 4855032, at *5 (D. Md. Sept. 29, 2014). For these reasons, Plaintiff's *Monell* claim based on a failure to train shall also be dismissed without prejudice.

*Failure to Supervise and Discipline*

Plaintiff also appears to assert a failure to supervise claim against the BPD regarding the use of excessive force. To state a *Monell* claim for supervisory liability, a plaintiff must allege: (1)

---

[8] Apparently undercutting her arguments, Plaintiff alleges that the BPD *has* implemented a plan to train 30% of active-duty patrol officers on behavioral health-related issues and that new recruits are given three days of training on crisis intervention. ECF 20 ¶ 9. But she alleges no actual deficiency in these programs.

the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury; (2) the supervisor's response to the knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) an affirmative causal link between the supervisor's inaction and the constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). Initially, the Court observes that the Complaint fails to name or identify any individual acting in a supervisory capacity. That itself is fatal to Plaintiff's claim because the Court cannot ascertain whether the supervisor had actual or constructive knowledge of any improper conduct if the supervisor has not been identified.[9] The rest of Plaintiff's allegations state, in conclusory terms without any supporting factual allegations, that the BPD failed to "supervise and discipline its police officers against the use of excessive force"; that it "lacks an effective system for reporting acts of excessive force"; that it "fails to punish, sanction, retrain or terminate" officers; and that in many excessive force cases, "no police official . . . ever investigated" the officer or "request[ed] that such officer be disciplined or prosecuted." ECF 20 ¶¶ 52–53. "It is not sufficient to state in 'broad, conclusory terms and in a variety of different ways' that the police department 'failed to train and supervise its officers.'" *Peprah v. Williams*, Civ. No. GLR-18-990, 2019 WL 224245, at *6 (D. Md. Jan. 15, 2019) (quoting *Peters*, 2014 WL 4855032, at *5). As such, Plaintiff's *Monell* claim based on supervisory liability is insufficiently pleaded and will be dismissed without prejudice. *See, e.g.*, *Ross v. Prince George's Cnty.*, Civ. No. DKC 11-1984, 2012 WL 1204087, at *9 (D. Md. Apr. 10, 2012) (dismissing a *Monell* claim because the complaint

---

[9] In briefing, the parties dispute whether Officer Smith's actions can support a claim for supervisory liability, but Plaintiff only brings Count VIII (the *Monell* claim) against the City and BPD.

"merely state[ed] in conclusory terms that the [defendant] failed 'to adequately train and supervise officers in the proper use of force' and that it 'consistently failed' to investigate, discipline, and record acts of excessive force").

*Condonation*

Finally, Plaintiff alleges that three separate incidents over a period of three years establish that the BPD had a custom or use of improperly engaging with armed suspects experiencing a mental health crisis. *See* ECF 20 ¶¶ 12–14. A municipality can be liable under *Monell* if policymakers "fail to put a stop to or correct a widespread pattern of unconstitutional conduct." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (internal quotation marks omitted) (quoting *Spell*, 824 F.2d at 1389). To state a claim under this "condonation" or "custom or usage" theory, a plaintiff must allege facts that support a "persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Id.* (internal quotation marks omitted) (quoting *Spell*, 924 F.2d at 1386–91). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Nicholson*, 2021 WL 1541667, at *8 (quoting *Spell*, 824 F.2d at 1387).

Plaintiff's allegations once again fall short. One of the incidents she describes, the fatal shooting of Tyree Moorehead, occurred in 2022 and post-dated the August 8, 2021, incident involving Martin. *See* ECF 20 ¶ 14. As such, the Court cannot conclude, without more, that the BPD engages in a practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (citation omitted). Plaintiff also argues that since 2019, the BPD "was aware that it could not properly respond to a mental health crisis" but "did not take any action on BPD's interaction" with armed individuals experiencing mental health

crises. ECF 26-1 at 9. A practice or custom that gives rise to Section 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees."[10] *Nicholson*, 2021 WL 1541667, at *8 (quoting *Milligan*, 743 F.2d at 230). The Court also cannot infer BPD's constructive or actual knowledge. Although Plaintiff claims, in her opposition to the motions to dismiss, that "BPD and Baltimore City have stated publicly" that the mental health policy "has an effect on murder investigations" and "is a total failure," ECF 26-1 at 9, the Complaint is devoid of any actual such statements. The only relevant allegation in the Complaint is that a Behavioral Health employee "stated" that one of the incidents "could have gone better if a mental health professional was present" and that the incident showed "a total system failure of the behavioral health system." ECF 20 ¶ 13. These assessments from a private citizen, however, do not demonstrate the *BPD*'s awareness about its practices regarding mental health crises and armed individuals.

In short, Plaintiff has not sufficiently alleged a "persistent and widespread" practice that could plausibly show deliberate indifference on the part of the BPD. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) ("As our decision in *Canton* makes clear, 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). Therefore, Plaintiff fails to state a plausible condonation claim, and it too must be dismissed without prejudice.

---

[10] Confusingly, the Complaint alleges that the BPD *did* act to create the Crisis Intervention Team Certification and other training plans in 2021. ECF 20 ¶ 9.

IV.  **CONCLUSION**

For the reasons stated above, the City's and BPD's motions to dismiss are GRANTED and Plaintiff's motion to remand is DENIED. All claims against the City and the BPD will be dismissed with prejudice, except the *Monell* claim against the BPD, which is dismissed without prejudice. A separate Order follows.

Dated: June 12, 2024

_____/s/_____
Stephanie A. Gallagher
United States District Judge